# FIRST MERCURY INSURANCE COMPANY
### (A STOCK COMPANY)
**STATUTORY HOME OFFICE: 200 SOUTH WACKER DRIVE, SUITE 2390, CHICAGO, IL 60606**
**ADMINISTRATIVE OFFICE: 26600 TELEGRAPH RD., SOUTHFIELD, MI 48033**
## COMMERCIAL EXCESS LIABILITY POLICY
### RENEWAL DECLARATIONS

*Serviced By:* CoverX Specialty Insurance Services
*California License No. 0573926*

**POLICY NUMBER** TX-EX-0000037346-02
**RENEWAL OF:** TX-EX-0000037346-01

| ITEM 1. NAMED INSURED AND MAILING ADDRESS | BROKER NAME AND ADDRESS |
|---|---|
| Rig QA International Inc | Southern Cross Underwriters - Metairie |
| 12725 Cude Cemetery Road<br>Willis, TX 77318 | 3300 W Esplanade Avenue  Suite 600<br>Metairie, LA 70002 |

**ITEM 2.** POLICY PERIOD   From:      12/24/2014    To:      12/24/2015
AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**ITEM 3.** LIMIT OF INSURANCE:

| | | |
|---|---|---|
| A. | Each Occurrence Limit | $5,000,000 |
| B. | General Aggregate Limit | $5,000,000 |
| C. | Products-Completed Operations Aggregate Limit | $5,000,000 |
| D. | Total Policy Aggregate | $5,000,000 |

**ITEM 4.** SCHEDULE OF CONTROLLING UNDERLYING INSURANCE: See schedule attached

**ITEM 5.** PREMIUM COMPUTATION:
Premium                                                █████████
Policy Minimum Premium                        █████████

Coverage for certified acts of terrorism has been rejected; exclusion attached.   [X]
(Per TRIA Disclosure Notice.)

**TOTAL POLICY PREMIUM:**                              ██████████████████

**ITEM 6.** ENDORSEMENTS ATTACHED TO THIS POLICY:  See Schedule of Forms and Endorsements

████████ Processing Fee

*This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as surplus line coverage pursuant to the Texas insurance statutes.  The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and this insurer is not a member of the property and casualty insurance guaranty association created under Chapter 462, Insurance Code.  Chapter 225, Insurance Code, requires payment of a 4.85 percent tax on gross premium.*

*IMPORTANT!  Please carefully examine your policy as it may contain significant coverage modifications or exclusions. If this policy is a renewal, it may not contain the same precise terms and conditions as the prior policy.*

Countersigned: _____12/15/2014_____     By: _____
                              Date                                         Authorized Representative

EXHIBIT B

## SCHEDULE OF UNDERLYING INSURANCE AND
## CONTROLLING UNDERLYING INSURANCE

This Schedule forms a part of your Policy No.  TX-EX-0000037346-02

Coverage only applies in excess of those policies and limits scheduled below:

---

1 .  Commercial General Liability     Insurance Company:  First Mercury Insurance Company     Primary
Controlling Underlying Insuranc

       Policy Number:    TX-CGL-0000037345-02
       Effective from:    12/24/2014  to  12/24/2015
       $1,000,000      Each Occurrence Limit
       $2,000,000      General Aggregate Limit (Other than Prod/Completed Ops)
       $2,000,000      Product/Completed Operations Aggregate Limit
       $1,000,000      Personal and Advertising Injury Limit

Coverage Trigger:     [X] Occurrence     [ ] Claims Made     Retro Date (if any):

Defense Costs:     [ ] Within Limits     [X] Outside Limits

---

2 .  Automobile Liability     Insurance Company:  Wesco Insurance Company     Primary
Controlling Underlying Insuranc

       Policy Number:    IL180064100
       Effective from:    12/24/2014  to  12/24/2015

Combined Bodily Injury & Property     $1,000,000 CSL    Each Accident
Damage Single Limit

---

3 .  Employers Liability     Insurance Company:  American Interstate Insurance Co.     Primary
Controlling Underlying Insuranc

       Policy Number:    AVWCLA2258522014
       Effective from:    12/24/2014  to  12/24/2015

    Bodily Injury by Accident    $1,000,000     Each Accident
    Bodily Injury by Disease    $1,000,000     Policy Limit
    Bodily Injury by Disease    $1,000,000     Each Employee

---

Insured:
Rig QA International Inc

Policy Number:   TX-EX-0000037346-02

# SCHEDULE OF FORMS AND ENDORSEMENTS

(other than applicable forms shown elsewhere in the policy)

Forms and Endorsements applying to and made part of this policy at the time of issuance:

GU 207 (6/78) - NAMED INSURED EXTENSION

FMIC EX 0002 (07/12) - FIRST MERCURY EXCESS LIABILITY COVERAGE FORM
FMIC LEGAL (04/14) - SERVICE OF SUIT
FMIC EX 2289 (07/13) - CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCL
FMIC EX 2315 (07/12) - EXCLUSION - ASSAULT AND BATTERY
FMIC EX 2357 (10/12) - AMENDMENT TO POLLUTION EXCLUSION
FMIC UE 2266 (05/12) - MINIMUM EARNED PREMIUM ENDORSEMENT
FMIC CLAIM NOTIFICATION (12/2006)

# FIRST MERCURY EXCESS LIABILITY COVERAGE FORM

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy. The words "we," "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under the "controlling underlying insurance." Other words and phrases that appear in quotation marks in this Policy have special meaning. Refer to Section IV – Definitions. Other words and phrases that are not defined under this Policy but defined in the "controlling underlying insurance" will have the meaning described in the Policy of "controlling underlying insurance."

The insurance provided under this Policy will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance," unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Policy will apply. However, the coverage provided under this Policy will not be broader than that provided by the applicable "controlling underlying insurance."

There may be more than one "controlling underlying insurance" Policy listed in the Declarations and there may be terms and provisions in those respective policies which are in conflict, and which are not superseded by the provisions of this Policy. In such a case, the provisions, exclusions and limitations of the "controlling underlying insurance" Policy applicable to the particular "event" for which a claim is made or "suit" is brought will apply.

## SECTION I – COVERAGES

1. **Insuring Agreement**

   a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Policy applies.

   We will have the right and duty to defend the insured against any "suit" seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance."

   When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages for "injury or damage."

   However, we will have no duty to defend the insured against any "suit" seeking damages for which insurance under this Policy does not apply.

   At our discretion, we may investigate any "event" that may involve this insurance and settle any resultant claim or "suit," for which we have the duty to defend.

   But:

   (1) The amount we will pay for "ultimate net loss" is limited as described in Section II – Limits Of Insurance; and

   (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Policy. However, if the Policy of "controlling underlying insurance" specifies that limits are reduced by defense expenses, our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of defense expenses, judgments or settlements under this Policy.

   b. This insurance applies to "injury or damage" that is subject to an applicable "retained limit." If any other limit, such as a sublimit, is specified in the "controlling underlying insurance," this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "controlling underlying insurance."

   c. If the "controlling underlying insurance" requires, for a particular claim, that the "injury or damage" occurs during its Policy period in order for that coverage to apply, then this insurance will only apply to that "injury or damage" if it occurs during the Policy period of this Policy. If the "controlling underlying insurance" requires that the "event" causing the particular "injury or damage" takes place during its Policy period in order for that coverage to apply, then this insurance will apply to the claim only if the "event" causing that "injury or damage" takes place during the Policy period of this Policy.

**d.**  Any additional insured under any policy of "controlling underlying insurance" will automatically be an additional insured under this Policy. If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "controlling underlying insurance." Additional insured coverage provided by this insurance will not be broader than coverage provided by the "controlling underlying insurance."

**e.**  This insurance applies to "injury or damage" only if, prior to the Policy period, no insured listed under – Who Is an Insured in any "controlling underlying insurance" and no employee authorized by you to give or receive notice of an occurrence or claim, knew that the "injury or damage" had occurred, in whole or in part. If such a listed insured or authorized employee knew, prior to the Policy period, that the "injury or damage" occurred, then any continuation, change or resumption of such "injury or damage" during or after the Policy period will be deemed to have been known prior to the Policy period.

**f.**  "Injury or damage" which occurs during the Policy period and was not, prior to the Policy period, known to have occurred by any insured listed under – Who Is An Insured in any "controlling underlying insurance," or by any employee authorized by you to give or receive notice of an occurrence or claim, includes any continuation, change or resumption of that "injury or damage" after the end of the Policy period.

**g.**  "Injury or damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under – Who Is An Insured in any "controlling underlying insurance" or any employee authorized by you to give or receive notice of an occurrence or claim:

    **(1)**  Reports all, or any part, of the "injury or damage" to us or any other insurer;

    **(2)**  Receives a written or verbal demand or claim for damages because of the "injury or damage"; or

    **(3)**  Becomes aware by any other means that "injury or damage" has occurred or has begun to occur.

**2.  Exclusions**

The following exclusions, and any other exclusions added by endorsement, apply to this Policy. In addition, the exclusions applicable to any "controlling underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this Policy.

**Insurance provided under this Policy does not apply to:**

**a.  Auto**

Any loss, cost or expense payable under or resulting from any of the following auto coverages:

    **(1)**  First-party physical damage coverage;
    **(2)**  No-fault coverage;
    **(3)**  Personal injury protection or auto medical payments coverage; or
    **(4)**  Uninsured or underinsured motorist's coverage.

**b.  Nuclear Energy Liability**

    **(1)**  "Injury or damage";

        **(a)**  with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        **(b)**  resulting from the "hazardous properties" of "nuclear material" and with respect to which **a.** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **b.** the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    **(2)**  "Injury or damage" resulting from "hazardous properties" of "nuclear material," if:

        **(a)**  the "nuclear material" **a.** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **b.** has been discharged or dispersed there from;

        **(b)**  the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

        **(c)**  the "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its

territories or possessions or Canada, this Exclusion **(c)** applies only to "property damage" to such "nuclear facility" and any property thereat.

For the purposes of this exclusion, "injury or damage" includes all forms of radioactive contamination of property.

**c.    Policy Period Limitation**

Any claim for damages covered by "controlling underlying insurance" during any period of time prior to or subsequent to the Policy period of this Policy.

**d.    Pollution**

**(1)**    "Injury or damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

Paragraph **d.(1)** does not apply to "injury or damage" arising out of heat, smoke or fumes from a hostile fire unless that hostile fire occurred or originated:

**(a)**    at any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(b)**    at any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants."

For the purposes of this insurance, hostile fire means one that becomes uncontrollable or breaks out from where it is intended to be.

**(2)**    Any loss, cost or expense arising out of any:

**(a)**    request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)**    claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

**(3)**    Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "pollutants";

**(4)**    Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs (1), (2), or (3) above.

This exclusion applies whether or not such "pollutants" has any function in your business, operations, premises, site or location.

**e.    Prior Notice**

Any claim for damages based on or directly or indirectly arising out of any matter, fact, circumstance, situation, transaction or event when notice thereof has been given to any insurer prior to the effective date of this Policy.

**f.    Renewed Or Replacement "Controlling Underlying Insurance"**

Any claim for damages covered under a renewed or replacement Policy of "controlling underlying insurance" that would not have been covered by the "controlling underlying insurance" that was in force at the inception of this Policy, unless coverage therefor has been provided by endorsement to this Policy.

**g.    Sublimits In "Controlling Underlying Insurance"**

Any claim for damages that is covered under a sublimit of any "controlling underlying insurance" or would have been covered but for the exhaustion of the sublimit of liability of the "controlling underlying insurance."

**h.    Terrorism**

Any "injury or damage" caused directly by or as a consequence of a "certified act of terrorism" or "other act of terrorism," including any action not otherwise excluded under the War and Military Action exclusion that is taken by a government or sovereign power (de jure or de facto) in controlling, preventing, suppressing, retaliating against or in any way responding to a "certified act of terrorism" or "other act of terrorism." Such "injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss, even if the act of a "certified act of terrorism" or "other act of terrorism," that causes or results in the "injury or damage" itself is itself a cause of loss that is otherwise insured against under this Policy.

**i.   War**

"Injury or damage," however caused, arising, directly or indirectly, out of:

**(1)**   War, including undeclared or civil war;

**(2)**   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)**   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.   Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

## SECTION II – LIMITS OF INSURANCE

**1.**   The Limits of Insurance shown in the Declarations, and the rules below fix the most we will pay regardless of the number of:

**(a)**   Insureds;

**(b)**   Claims made or "suits" brought or number of vehicles involved;

**(c)**   Persons or organizations making claims or bringing "suits"; or

**(d)**   Limits available under any "controlling underlying insurance."

**2.**   The Limits of Insurance as shown in the Declarations will apply as follows:

**(a)**   This insurance only applies in excess of the "retained limit."

**(b)**   The Total Policy Aggregate Limit, if stated in the Declarations is the most we will pay for the sum of all "ultimate net loss" for all "injury or damage" covered under this Policy. The Total Policy Aggregate Limit applies regardless of the sums indicated in the Declarations for any General Aggregate Limit or Products-Completed Operations Limit, and applies collectively, rather than separately, to all of your locations or projects.

**(c)**   Subject to **2. (b)** above, the General Aggregate Limit if stated in the Declarations is the most we will pay for the sum of all "ultimate net loss," for all "injury or damage" covered under this Policy other than any claims for damages falling within the "products-completed operations hazard" or arising out of the ownership, maintenance or use of a covered auto.

Subject to **2.(b)** above, the Products-Completed Operations Aggregate Limit if stated in the Declarations is the most we will pay for the sum of all "ultimate net loss" under Section I – Coverages for all "injury or damage" included within the "products-completed operations hazard."

However, this General Aggregate Limit and the Products-Completed Operations Aggregate Limit only applies to "injury or damage" that is subject to an aggregate limit of insurance under the "controlling underlying insurance."

**(d)**   Subject to Paragraph **2.(b)** and **2(c)** above, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under this Policy because of all "injury or damage" arising out of any one "event."

**(e)**   If the Limits of Insurance of the "controlling underlying insurance" are reduced by defense expenses by the terms of that policy, any payments for defense expenses we make will reduce our applicable Limits of Insurance in the same manner.

**3.**   If any Policy period of the "controlling underlying insurance" begins prior to, or extends beyond the Policy period of this Policy, payment of losses covered by the "controlling underlying insurance" for "events" occurring before or after the Policy period of this Policy shall not be deemed to reduce or exhaust the Limits of Insurance of the "controlling underlying insurance."

**4.**   The Aggregate Limits of the "controlling underlying insurance," where applicable, shall be unimpaired at the attachment date of this Policy, and for the purpose of this insurance only, "events" to which this insurance applies, taking place during the term of this Policy, shall be considered in determining the extent of any exhaustion of the "controlling underlying insurance" aggregate limits.

**5.**   Two or more claims arising out of the same, related or continuing offense, wrongful act, occurrence, act, error or omission shall be considered a single claim for the purposes of the Each Occurrence Limit. The claim shall be deemed to have been made at the time the first such claim was made.

**6.** If two or more Excess Policies of insurance issued by us apply to the same claim or claims for which any insured under this Policy is legally liable, only one Limit of Insurance under one Excess Policy shall apply. The limit shall be the highest of the Each Occurrence Limits of the Excess Policies that cover the claim or claims.

The General Aggregate Limit, the Products-Completed Operations Aggregate Limit, and the Total Policy Aggregate Limit of this Policy apply separately to each consecutive annual period of this Policy and to any remaining period of this Policy of less than 12 months, starting with the beginning of the Policy period shown in the Declarations, unless the Policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION III – CONDITIONS

The following conditions apply. In addition, the conditions applicable to any "controlling underlying insurance" are also applicable to the coverage provided under this Policy unless superseded by the following conditions.

**1.** **Appeals**

If the "controlling underlying insurer" or insured elects not to appeal a judgment in excess of the amount of the "retained limit," we may do so at our own expense. We will also pay for taxable court costs, pre and post judgment interest and disbursements associated with such appeal. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in Section II – Limits Of Insurance.

**2.** **Bankruptcy**

    **a.** **Bankruptcy Or Insolvency Of Insured**

        Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Policy.

    **b.** **Bankruptcy Of Controlling Underlying Insurer**

        Bankruptcy or insolvency of the "controlling underlying insurer" will not relieve us of our obligations under this Policy.

        However, insurance provided under this Policy will not replace any "controlling underlying insurance" in the event of bankruptcy or insolvency of the "controlling underlying insurer." The insurance provided under this Policy will apply as if the "controlling underlying insurance" were in full effect and recoverable.

**3.** **Cancellation**

    **a.** The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

    **b.** We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

    **c.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    **d.** Notice of cancellation will state the effective date of cancellation. The Policy period will end on that date.

    **e.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

    **f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**4.** **Changes**

This Policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured is authorized by all other insureds to make changes in the terms of this Policy with our consent. This Policy's terms can be amended or waived only by endorsement.

**5.** **Duties In The Event Of a Claim, Event, or "Suit"**

    **a.** You must see to it that we are notified as soon as practicable of an "event," regardless of the amount, which may result in a claim under this Policy. To the extent possible, notice should include:

        **(1)** How, when and where the "event" took place;

    **(2)**    The names and addresses of any injured persons and witnesses; and

    **(3)**    The nature and location of any "injury or damage" arising out of the "event."

**b.**    If a claim is made or "suit" is brought against any insured, you must:

    **(1)**    Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)**    notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**    You and any other insured involved must:

    **(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)**    authorize us to obtain records and other information;

    **(3)**    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)**    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury or damage" to which this insurance may also apply.

**d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**6.**    **Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this Policy at any time during the Policy period and up to three years afterward.

**7.**    **First Named Insured Duties**

The first Named Insured is the person or organization first named in the Declarations and is responsible for the payment of all premiums. The first Named Insured will act on behalf of all other Named Insureds for giving and receiving of notice of cancellation or the receipt of any return premium that may become payable.

At our request, the first Named Insured will furnish us, as soon as practicable, with a complete copy of any "controlling underlying insurance" and any subsequently issued endorsements or policies which may in any way affect the insurance provided under this Policy.

**8.**    **Legal Action Against Us**

No person or organization has a right under this Policy: To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or to sue us on this Policy unless all of its terms have been fully complied with. A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured, but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured, "controlling underlying insurer" and the claimant or the claimant's legal representative.

**9..**    **Loss Payable**

Liability under this Policy does not apply to a given claim unless and until: The insured or insured's "controlling underlying insurer" has become obligated to pay the "retained limit"; and the obligation of the insured to pay the "ultimate net loss" in excess of the "retained limit" has been determined by a final settlement or judgment or written agreement among the insured, claimant, "controlling underlying insurer" (or a representative of one or more of these) and us.

**10.**    **Maintenance Of/Changes To "Controlling Underlying Insurance"**

Any "controlling underlying insurance" must be maintained in full effect without reduction of coverage or limits except for the reduction of aggregate limits in accordance with the provisions of such "controlling underlying insurance" that results from "injury or damage" to which this insurance applies.

Such exhaustion or reduction is not a failure to maintain "controlling underlying insurance." Failure to maintain "controllir underlying insurance" will not invalidate insurance provided under this Policy, but insurance provided under this Policy w apply as if the "controlling underlying insurance" were in full effect.

The first Named Insured must notify us in writing, as soon as practicable, if any "controlling underlying insurance" is cancelled, not renewed, replaced or otherwise terminated, or if the limits or scope of coverage of any "controlling underlying insurance" is changed.

11.  Other Insurance

This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Policy. When this insurance is excess, if no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all those other insurers. When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

(1)  The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Policy; and

(2)  The total of all deductible and self-Insured amounts under all that other insurance.

12.  **Transfer of Defense**

a.  **Defense Transferred To Us**

When the limits of "controlling underlying insurance" have been exhausted, in accordance with the provisions of "controlling underlying insurance," we may elect to have the defense transferred to us. We will cooperate in the transfer of control to us of any outstanding claims or "suits" seeking damages to which this insurance applies and which would have been covered by the "controlling underlying insurance" had the applicable limit not been exhausted.

Where the settlement of any "suit" defended by the "controlling underlying insurer" results, or will result, in the exhaustion of the "controlling underlying insurance," and will also require the payment of a portion of the Limits of Insurance under this Policy in order to effectuate the settlement, we will have the right, but not the duty, to defend the insured with respect to that "suit," and will be under no obligation to have the defense transferred to us. Where the satisfaction of any judgment entered against the insured in a "suit" defended by the "controlling underlying insurer" results, or will result, in the exhaustion of the "controlling underlying insurance," and will also require the payment of a portion of the Limits of Insurance under this Policy in order to effectuate the satisfaction of that judgment, we will have the right, but not the duty, to defend the insured with respect to that "suit," and will be under no obligation to have the defense transferred to us.

b.  **Defense Transferred By Us**

When our limits of insurance have been exhausted our duty to provide a defense will cease. We will cooperate in the transfer of control of defense to any insurer specifically written as excess over this Policy of any outstanding claims or "suits" seeking damages to which this insurance applies and which would have been covered by the "controlling underlying insurance" had the applicable limit not been exhausted.

In the event that there is no insurance written as excess over this Policy, we will cooperate in the transfer of control to the insured and its designated representative.

13.  **Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual Named Insured. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

14.  **When We Do Not Renew**

If we decide not to renew this Policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the non-renewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION IV – DEFINITIONS**

The definitions applicable to any "controlling underlying insurance" also apply to this insurance. In addition, the following Definitions apply:

1.  **"By-product material"** has the meaning given to it in the Atomic Energy Act of 1954 or in any law amendatory thereof.

2.  **"Certified act of terrorism"** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

a.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    **b.**    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.**    **"Controlling underlying insurance"** means any policy of insurance or self-insurance listed in the Declarations under the Schedule of "controlling underlying insurance."

**4.**    **"Controlling underlying insurer"** means any insurer who provides any policy of insurance listed in the Declarations under the Schedule of "controlling underlying insurance."

**5.**    **"Event"** means an occurrence, offense, accident, act, or other event, to which the applicable "controlling underlying insurance" applies.

**6.**    **"Hazardous properties"** includes radioactive, toxic or explosive properties.

**7.**    **"Injury or damage"** means any "injury or damage" covered in the applicable "controlling underlying insurance" arising from an "event."

**8.**    **"Nuclear facility"** means:

    **(a)**    Any "nuclear reactor";

    **(b)**    Any equipment or device designed or used for:

        **(i)**    separating the isotopes of uranium or plutonium,

        **(ii)**    processing or utilizing "spent fuel," or

        **(iii)**    handling, processing or packaging "waste";

    **(c)**    Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)**    Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**"Nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**"Property damage"** includes all forms of radioactive contamination of property.

**9.**    **"Nuclear material"** means "source material," "special nuclear material" or "by-product material."

**10.**    **"Other act of terrorism"** means any violent act that is dangerous or destructive to human life, property or infrastructure, whether actual or threatened, and whether committed by one or more persons acting alone or in connection with any group or organization. The act must not be certified as a "certified act of terrorism" pursuant to the federal Terrorism Risk Insurance Act and the act must contain one or more of the following criteria:

    **a.**    The act is intended to influence, coerce or protest against the actions, behavior or policies of any government or sovereign power (de jure or de facto) or any segment of the government or sovereign; or

    **b.**    To further any political, ideological, economic, religious or social aim, objective or cause; or

    **c.**    To disrupt any segment of the global economy or the economy of any country or political state.

**11.**    **"Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed, and is not limited to "waste," as defined with respect to the Nuclear Energy Liability exclusion.

**12.**    **"Products-completed operations hazard"** means; all "injury or damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **a.**    Products that are still in your physical possession; or

    **b.**    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(1)**    When all of the work called for in your contract has been completed.

        **(2)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

"**Products-completed operations hazard**" does not include "injury or damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

13. "**Retained limit**" means the available limits of "controlling underlying insurance" and self insured amounts applicable to the claim.

14. "**Source material**" has the meaning given to it in the Atomic Energy Act of 1954 or in any law amendatory thereof.

15. "**Special nuclear material**" has the meaning given to it in the Atomic Energy Act of 1954 or in any law amendatory thereof.

16. "**Spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

17. "**Suit**" means a civil proceeding in which damages because of "injury or damage" to which this insurance applies are alleged. "Suit" includes:

An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

18. "**Ultimate net loss**" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

**a.** Settlements, judgments, binding arbitration; or
**b.** Other binding alternate dispute resolution proceeding entered into with our consent.

"**Ultimate net loss**" includes defense expenses if the "controlling underlying insurance" specifies that limits are reduced by defense expenses.

19. "**Waste**" means, for the purposes of the Nuclear Energy Liability exclusion, any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

20. "**Your product**" means any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**a.** You;
**b.** Others trading under your name; or
**c.** A person or organization whose business or assets you have acquired; and

"**Your product**" also means containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products and:

**a.** Includes, warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**b.** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

21. "**Your work**" means work or operations performed by you or on your behalf; and materials, parts or equipment furnished in connection with such work or operations.   It also includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and

**b.** The providing of or failure to provide warnings or instructions.

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

# ENDORSEMENT

This endorsement, effective on      12/24/2014      at 12:01 A.M. standard time, forms a part of
                                      (DATE)

Policy No. TX-EX-0000037346-02      of the      First Mercury Insurance Company
                                                 (NAME OF INSURANCE COMPANY)

Issued to  Rig QA International Inc

By  CoverX Specialty      _____
                                      Authorized Representative

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE NAMED INSURED SHALL READ AS FOLLOWS:

Rig QA International Inc
Rig QA Consultores De Riscos LTD
Rig QA International
Belize LDC

GU 207 (Ed. 6-78)                                      Page 1 of 1

# SERVICE OF SUIT

The Company agrees that in the event of its failure to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

The Company hereby designates the Commissioner, Director or Superintendent of Insurance, or other officer specified by law for that purpose, or his successor or successors in office, or the person designated below, in the space indicated, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured arising out of this contract of insurance.  It is further agreed that the Company shall abide by the final decision of any court having jurisdiction in which such action is filed, or by the decision of any appellate court in the event of an appeal.

Upon receipt of process served hereunder, the Company hereby designates Wendy Drum, Legal Department, 26600 Telegraph Road, Southfield, Michigan 48033 as the person to whom the officer designated above is authorized to mail such process.

In the alternative, process may be served upon the authorized agent of the Company whose name and address are:

**FIRST MERCURY INSURANCE COMPANY**
**26600 TELEGRAPH RD.**
**SOUTHFIELD, MICHIGAN  48033**

FMIC LEGAL (04/2014)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

**FIRST MERCURY EXCESS LIABILITY COVERAGE FORM**
**FIRST MERCURY LEAD EXCESS LIABILITY COVERAGE FORM**

It is agreed under **SECTION I – COVERAGES, 1. Insuring Agreement,** Paragraphs **1.e., f.** and **g.** are deleted in their entirety and the following exclusion is added to **SECTION I – COVERAGES, 2. Exclusions** of this Policy:

This insurance does not apply to:

1. Any damages arising out of or related to "injury or damage" whether such "injury or damage" is known or unknown,

   (a) which first occurred in whole or in part prior to the inception date of this Policy (or the Retroactive Date of this Policy, if any; whichever is earlier); or

   (b) which are, or are alleged to be, in the process of occurring as of the inception date of the Policy (or the Retroactive Date of this Policy, if any; whichever is earlier) even if the "injury or damage" continues during this policy period; or

   (c) which were caused, or are alleged to have been caused, by the same condition(s) or defective construction which first existed prior to the inception date of this Policy.

2. Any damages arising out of or related to "injury or damage" whether known or unknown, which are in the process of adjustment, settlement, or "suit" as of the inception date of this Policy (or the Retroactive Date of this Policy, if any; whichever is earlier).

We shall have no duty to defend any Insured against any loss, claim, "suit," or other proceeding alleging damages arising out of or related to "injury or damage" to which this endorsement applies.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                    Policy No.                    Endorsement No.

Named Insured
                                         Countersigned by _____

FMIC-EX-2289(07/2013)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – ASSAULT AND BATTERY

This endorsement modifies insurance provided under the following:

**FIRST MERCURY EXCESS LIABILITY COVERAGE FORM**
**FIRST MERCURY LEAD EXCESS LIABILITY COVERAGE FORM**

SECTION I – COVERAGES, 2. **Exclusions** is amended and the following Exclusion is added:

**ASSAULT AND BATTERY EXCLUSION**

**A.** Claims or "suits" to recover damages for "injury or damage" based upon, related to, arising out of, directly or indirectly resulting from, in consequence of, in any way connected to, or in the sequence of events involving any actual or alleged "assault" and/or "battery," as those items are defined herein, and claims or "suits" for false arrest, false detention or false imprisonment, where such false arrest, false detention or false imprisonment is based upon, relates to, arises out of, directly or indirectly results from, is in consequence of, is in any way connected to, or is in the sequence of events involving any actual or alleged "assault" and/or "battery." Pursuant to this exclusion, the Company is under no duty to defend or indemnify any insured regardless of the degree of culpability or intent and without regard to:

    **1.** Whether the acts are alleged to be by or at the instruction or at the direction of any insured, its/her/his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near premises owned or occupied by any insured; or by any other person;

    **2.** Whether the acts are alleged to be the legal or proximate or but for cause of "injury or damage" or to have concurrently caused or independently caused said "Injury or damage";

    **3.** The actual or alleged failure or fault of any insured or its/her/his officers, employees, agents or servants, in the hiring, supervision, retention or control of any person, whether or not an officer, employee, agent or servant of any insured;

    **4.** The actual or alleged failure or fault of any insured, or its/her/his officers, employees, agents or servants, to attempt to suppress, prevent, bar, manage or halt any such acts which may constitute an "assault" and/or "battery";

    **5.** The actual or alleged failure or fault of any insured, or its/her/his officers, employees, agents, or servants, to maintain a safe or secure environment or place of business;

    **6.** Any act, error or omission by any insured, or its/her/his officers, employees, agents, or servants, in rendering or failing to render aid or assistance to any person; or

    **7.** The theory of or basis for liability, recovery or relief, or the manner in which such theory of or basis for liability, recovery or relief is alleged, asserted or pleaded (including, but not limited to, claims or "suits" which allege, assert or plead negligence in whole or in part), where the operative acts and/or underlying events constitute an "assault" and/or "battery." The Company shall have the sole and exclusive right to determine whether or not such operative acts and/or underlying events constitute an "assault" and/or "battery." If such determination is disputed, the Company shall have the right, in addition to all other rights and remedies at law and/or in equity, to file and prosecute an action for declaratory relief at any time in a court having appropriate jurisdiction.

**B.** Additionally, this exclusion applies to any claim or "suit" by any person, firm or organization, asserting rights derived from, or contingent upon, any person having or asserting a claim or "suit" that is excluded under paragraph **A.** above. This exclusion also excludes from coverage claims or "suits" for:

    **1.** Emotional distress, or for loss of society, services, consortium and/or income;

    **2.** Reimbursement for expenses (including, but not limited to medical expenses, hospital expenses and wages) paid or incurred by such other person, firm or organization; or

    **3.** Any obligation to share damages with indemnify or repay someone who must pay damages because of "injury or damage,"

where such claims or "suits" are based upon, relate to, arise out of, directly or indirectly result from, are in consequence of, are in any way connected to, or are in the sequence of events involving any actual or actual or alleged "assault" and/or "battery."

**SECTION V – DEFINITIONS** is amended and the following added:

    **"Assault"** means the apprehension of harmful or offensive contact by a person or thing, or the apprehension of harmful or offensive contact between or among two or more persons, by threats through words or deeds.

    **"Battery"** means a harmful or offensive contact by a person or thing, or a harmful or offensive contact between or among two or more persons.

**THIS ENDORSEMENT SUPERCEDES AND REPLACES ANY OTHER PROVISION(S) OF THE POLICY THAT ARE INCONSISTANT WITH THE TERMS OF THIS ENDORSEMENT.**

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                Policy No.                    Endorsement No.

Named Insured

                                     Countersigned by _____

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT TO POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

## FIRST MERCURY EXCESS LIABILITY COVERAGE FORM

**SECTION I – COVERAGES, 2. Exclusions, d. Pollution** is deleted in its entirety and our policy is follow form "controlling underlying insurance" with respect to pollution coverages, limitations and exclusions.

### ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                          Policy No.                          Endorsement No.

Named Insured

Countersigned by _____

FMIC-EX-2357(10/2012)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINIMUM EARNED PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

**FIRST MERCURY EXCESS LIABILITY COVERAGE FORM**
**FIRST MERCURY LEAD EXCESS LIABILITY COVERAGE FORM**
**FIRST MERCURY UMBRELLA LIABILITY COVERAGE FORM**

The following additional policy Conditions supersede any other policy conditions and the Named Insured hereby agrees that the total policy premium and minimum earned premium(s) due for this policy shall be calculated in accordance with the following:

**Total Policy Premium**

This policy is subject to a Total Policy Premium which means the premium that is calculated as follows:

1. The deposit premium as shown in the policy Declarations, plus
2. Any premium adjustment by endorsement, plus
3. Any additional premium developed by audit.

The premium entered on the Declarations page of this policy as DEPOSIT PREMIUM is a provisional premium only and is subject to adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy.

**A. Minimum Earned Premium by Date Certain**

If the box below is checked and a date filled in where applicable the minimum earned premium for this policy will be 100% earned by the specific date referenced in this endorsement and there will be no return of premium if you cancel this policy.

☐ After ( ) the premium is fully earned.

**B. Audits and Minimum Earned Premium**
With regard to audits the DEPOSIT PREMIUM as stated in the policy Declarations cannot be reduced due to an audit. Premium adjustments affected as a result of premium audits may be done while the policy is in effect or after the policy is no longer in effect. The due date for audit premiums is the date shown as the due date on the bill.

**C. Cancellation and Minimum Earned Premium**

1. If you cancel this policy, the return premium will be the lesser of:
   a. 90% of the pro rata unearned premium or
   b. 75% of the Deposit Premium.

2. If the Named Insured fails to remit premium payment when due, such failure shall be considered a request by the Named Insured to cancel this policy and the return premium will be determined in accordance with C. 1.

3. If we cancel the policy for any reason, other than for non-payment of premium, the "minimum earned premium" shall not apply. We will return to you the pro rata amount of the unearned premium.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                    Policy No.                         Endorsement No.

Named Insured

                                         Countersigned by _____

FMIC-UE-2266(05/2012)

## CLAIM NOTIFICATION

Send all claim notifications and information to:

## First Mercury Insurance Company

P.O. Box 5096
Southfield, Michigan  48086

Or

26600 Telegraph Rd.
Southfield, MI 48033

Or Fax to:

## First Mercury Insurance Company

Attn:  Claim Department
Fax Number:  (248) 357-5036

Or Email to
Claimsfax@firstmercury.com

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

FMIC – Claim Notification (12/2006)

| **IMPORTANT NOTICE** | **AVISO IMPORTANTE** |
|---|---|

To obtain information or make a complaint:

Para obtener información o para someter una queja:

1.  You may contact your insurance agent.

Puede comunicarse con su agente de seguro.

2.  You may call the company's toll-free telephone number for information or to make a complaint at:

Usted puede llamar al número de teléfono gratis de la compañía para información o para someter una queja al:

**1-800-762-6837**

**1-800-762-6837**

3.  You may write to the company at:

Usted también puede escribir la compañía:

    First Mercury Insurance Company
    26600 Telegraph Rd.
    Southfield, MI 48033

    First Mercury Insurance Company
    26600 Telegraph Rd.
    Southfield, MI 48033

4.  You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

Puede comunicarse con el Departamento de Seguros de Texas para obtener información acera de companies, coberturas, derechos o quejas al:

**1-800-252-3439**

**1-800-252-3439**

5.  You may write the Texas Department of Insurance:

Puede escribir al Departamento de Seguros de Texas:

P.O. Box 149104
Austin, TX 78714-9104
FAX: (512) 475-1771
Web: http:/www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

P.O. Box 149104
Austin, TX 78714-9104
FAX: (512) 475-1771
Web: http:/www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

6.  **PREMIUM OR CLAIM DISPUTES:**

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**

    Should you have a dispute concerning your premium or about a claim you should contact your agent first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente primero.  Si no se resuelve la disputa, puede comunicarse con el departamento (TDI).

**ATTACH THIS NOTICE TO YOUR POLICY:**

**UNA ESTE AVISO A SU POLIZA:**

This notice is for information only and does not become a part or condition of the attached document.

Este aviso es solo para propósito de Información y no se convierte en parte o condición del documento adjunto.

TX.SLFORM(07/2007)



26600 Telegraph Rd.
Southfield, MI 48033

P.O. Box 5069
Southfield, MI 48086

12/15/2014

**Re:** Rig QA International Inc
TX-EX-0000037346-02

# IMPORTANT NOTICE TO POLICYHOLDERS

**PLEASE REVIEW THIS RENEWAL DECLARATION CAREFULLY. WHILE YOUR POLICY NUMBER AND INSURANCE CARRIER HAVE NOT CHANGED FROM YOUR EXPIRING POLICY, THE ATTACHED DECLARATION PAGE UPDATES COVERAGES, TERMS AND CONDITIONS FOR YOUR RENEWAL TERM AND MAY DIFFER FROM THOSE EXPIRING AS WELL AS THOSE REQUESTED IN YOUR RENEWAL APPLICATION. NEW OR CHANGED POLICY FORMS WILL BE THE ONLY FORMS ATTACHED TO THIS RENEWAL DECLARATION.**

**PLEASE REVIEW THIS DECLARATION AND/OR CONSULT WITH YOUR AGENT/BROKER AND ADVISE US IMMEDIATELY IN WRITING OR VIA FAX SHOULD YOU HAVE ANY QUESTIONS, CONCERNS OR CHANGES TO YOUR POLICY.**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COVERAGE TERMS/CONDITIONS
# CHANGES ENDORSEMENT

This endorsement modifies insurance provided under the:

**FIRST MERCURY EXCESS LIABILITY COVERAGE FORM**
**FIRST MERCURY LEAD EXCESS LIABILITY COVERAGE FORM**
**FIRST MERCURY UMBRELLA LIABILITY COVERAGE FORM**

The following coverage terms/conditions changes are made as follows:

The Commercial Auto Liability is amended to read per the attached Schedule of Underlying Insurance and Controlling Underlying Insurance.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective 12/24/2014          Policy No. TX-EX-0000037346-02          Change No. 2

Named Insured Rig QA International Inc

Countersigned by _____

FMIC-UE-2383(10/2012)

# SCHEDULE OF UNDERLYING INSURANCE AND
# CONTROLLING UNDERLYING INSURANCE
### AMENDED
### CHANGE EFFECTIVE DATE:  12/24/2014

This Schedule forms a part of your Policy No.  TX-EX-0000037346-02

Coverage only applies in excess of those policies and limits scheduled below:

---

1 .   Commercial General Liability     Insurance Company:  First Mercury Insurance Company     Primary
Controlling Underlying Insuranc

| | |
|---|---|
| Policy Number: | TX-CGL-0000037345-02 |
| Effective from: | 12/24/2014  to  12/24/2015 |
| $1,000,000 | Each Occurrence Limit |
| $2,000,000 | General Aggregate Limit (Other than Prod/Completed Ops) |
| $2,000,000 | Product/Completed Operations Aggregate Limit |
| $1,000,000 | Personal and Advertising Injury Limit |

Coverage Trigger:   [X] Occurrence    [ ] Claims Made    Retro Date (if any):

Defense Costs:   [ ] Within Limits    [X] Outside Limits

---

2 .   Automobile Liability     Insurance Company:  Wesco Insurance Company     Primary
Controlling Underlying Insuranc

| | |
|---|---|
| Policy Number: | ILR18-00641-00 |
| Effective from: | 12/24/2014  to  12/24/2015 |

Combined Bodily Injury & Property
Damage Single Limit     $1,000,000 CSL   Each Accident

---

3 .   Employers Liability     Insurance Company:  American Interstate Insurance Co.     Primary
Controlling Underlying Insuranc

| | |
|---|---|
| Policy Number: | AVWCTX2356172014 |
| Effective from: | 12/24/2014  to  12/24/2015 |

| | | |
|---|---|---|
| Bodily Injury by Accident | $1,000,000 | Each Accident |
| Bodily Injury by Disease | $1,000,000 | Policy Limit |
| Bodily Injury by Disease | $1,000,000 | Each Employee |

---

     

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COVERAGE TERMS/CONDITIONS
# CHANGES ENDORSEMENT

This endorsement modifies insurance provided under the:

**FIRST MERCURY EXCESS LIABILITY COVERAGE FORM**
**FIRST MERCURY LEAD EXCESS LIABILITY COVERAGE FORM**
**FIRST MERCURY UMBRELLA LIABILITY COVERAGE FORM**

The following coverage terms/conditions changes are made as follows:

The Employers Liability is amended to read per the attached Schedule of Underlying Insurance and Controlling Underlying Insurance.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective 12/24/2014          Policy No. TX-EX-0000037346-02       Change No. 1

Named Insured Rig QA International Inc

Countersigned by _____

FMIC-UE-2383(10/2012)

# SCHEDULE OF UNDERLYING INSURANCE AND
# CONTROLLING UNDERLYING INSURANCE
### AMENDED
### CHANGE EFFECTIVE DATE:  12/24/2014

This Schedule forms a part of your Policy No.  TX-EX-0000037346-02

Coverage only applies in excess of those policies and limits scheduled below:

---

| 1. | Commercial General Liability | Insurance Company:  First Mercury Insurance Company | Primary<br>Controlling Underlying Insuranc |

|  | Policy Number: | TX-CGL-0000037345-02 |
| Effective from: | 12/24/2014  to  12/24/2015 |
| $1,000,000 | Each Occurrence Limit |
| $2,000,000 | General Aggregate Limit (Other than Prod/Completed Ops) |
| $2,000,000 | Product/Completed Operations Aggregate Limit |
| $1,000,000 | Personal and Advertising Injury Limit |

Coverage Trigger:   [X] Occurrence      [ ] Claims Made      Retro Date (if any):

Defense Costs:      [ ] Within Limits    [X] Outside Limits

---

| 2. | Automobile Liability | Insurance Company:  Wesco Insurance Company | Primary<br>Controlling Underlying Insuranc |

Policy Number:   IL180064100

Effective from:   12/24/2014  to  12/24/2015

Combined Bodily Injury & Property Damage Single Limit     $1,000,000 CSL   Each Accident

---

| 3. | Employers Liability | Insurance Company:  American Interstate Insurance Co. | Primary<br>Controlling Underlying Insuranc |

Policy Number:   AVWCTX2356172014

Effective from:   12/24/2014  to  12/24/2015

| Bodily Injury by Accident | $1,000,000 | Each Accident |
| Bodily Injury by Disease | $1,000,000 | Policy Limit |
| Bodily Injury by Disease | $1,000,000 | Each Employee |

---